IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Donald D. Benson, ) | C/A No.: 1:11-2621-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Savannah River Nuclear Solutions LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, Donald D. Benson ("Plaintiff") is suing his former employer Savannah River Nuclear Solutions LLC ("Defendant"). Plaintiff alleges a retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff also asserts state law claims of breach of contract and breach of the implied duty of good faith and fair dealing.

This matter comes before the court on Defendant's motion for summary judgment filed on October 11, 2012. [Entry #31]. The motion having been fully briefed [Entries #35, #38], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the court grant Defendant's motion.

I.      Factual and Procedural Background[1]

Plaintiff began his employment at the Savannah River Site in 1985 as a general service operator. Pl. Dep. 13:24–14:3, 16:25–17:11 [Plaintiff's deposition may be found at Entry #31-2]. He was ultimately promoted to senior laboratory technician and stayed in that position until his termination in April 2010. Pl. Dep. 22:25–23:9.

**The TIMS Unit**

In his role as a senior laboratory technician, Plaintiff operated the Thermal Ionization Mass Spectrometry Unit ("TIMS unit"). Pl. Dep. 28:12. The TIMS unit is comprised of two instruments: an older instrument called the MAT 261 and a newer instrument called the Triton. Pl. Dep. 49:3–6. The TIMS unit is used to measure sample composition by taking an element such as uranium or plutonium and breaking it down into its isotopic distribution and then reporting that into a weight percentage. Pl. Dep.

---

[1] As support for his opposition to Defendant's motion, Plaintiff submitted an affidavit dated November 23, 2012, giving his version of the facts of the case. [Entry #35-1]. Much of the factual background provided by Plaintiff in his response brief relies on his declaration rather than on deposition testimony, despite the fact that most of the information addressed in the declaration was also addressed in Plaintiff's deposition. Discovery in this case closed on August 24, 2012. [Entry #28]. Prior to the close of discovery, Plaintiff was deposed at length, at which time he was given the opportunity to state the facts on the record and be subject to examination regarding those facts. His failure to rely on the record facts in opposing summary judgment violates Fed. R. Civ. P. 56(c)(1)(A), which provides that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." *See also* Fed. R. Civ. P. 56(e) (stating that a party must properly support his assertions of fact and properly address another party's assertions of fact). Consequently, the undersigned disregards Plaintiff's post-discovery-deadline declaration in setting forth the factual background in this case. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Fuller v. Cnty. of Charleston*, 444 F. Supp. 2d 494, 499 (D.S.C. 2006) (citing *Larken v. Perkins*, 22 Fed. Appx. 114, *1 (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment)).

28:14–17.  Sherold Johnson is the chemist responsible for operation of the TIMS unit. Johnson Dep. 5:10–21 [Johnson's deposition may be found at Entry #31-5].  The TIMS unit is housed in an old building with fluctuating temperature and humidity.  Johnson Dep. 8:20–9:11.  Prior to using the TIMS unit, the operators complete a visual inspection to ensure there is no condensation on the TIMS unit's magnet or the hoses running from the chiller through the magnet.  Johnson Dep. 9:10–23.  During the relevant time period, if temperature and humidity conditions were not proper, Johnson would recommend that it not be used.  Johnson Dep. 8:20–9:3, 12:23–13:19.  She testified that in the 12 years that she was responsible for the TIMS unit, she recommended several times that the unit not be used.  Johnson Dep. 12:23–13:9.

**<u>Plaintiff Seeks a Promotion</u>**

According to Defendant's 30(b)(6) witness Karen Turner, in early March 2010, Defendant posted job openings for two first line manager ("FLM") positions.  Turner Aff. Ex. A [Entry #32-2 at 4–6].  Plaintiff testified that he applied for the positions through Defendant's competency-based posting system.  Pl. Dep. 97:6–10, 98:18–20.  He recalls having two co-workers help him complete the application because it was very confusing and difficult to fill out.  Pl. Dep. 98: 8–14.  He testified that he received email confirmation that his application had been completed successfully.  Pl. Dep. 97:6–19.

According to Defendant, Plaintiff accessed the system, but never completed his application.  Turner Dep. 6:14–7:11 [Turner's deposition may be found at Entry #31-7]. The system did not document any communications having been sent to Plaintiff.  Turner Dep. 7:2–6.  According to Janice Cook, the Analytical Process Support Manager, the

3

position posting closed on or about March 16, 2010. Cook Dep. 99:11–14 [Cook's deposition may be found at Entry #31-4]; Turner Aff. Ex. A [Entry #32-2 at 6]. Plaintiff's name was not forwarded to the hiring panel for consideration for the FLM positions. Turner Dep.7:7–14. Ultimately, Defendant promoted two individuals to the two open FLM positions in the lab in June 2010: Louise Mims (a female) and Maurice Lee (a male). Turner Aff., Ex. A [Entry #32-2 at 68, 91, 97].

**Plaintiff's Termination**

On the morning of March 11, 2010, Plaintiff attended a morning meeting led by his supervisor, Tom Frazier, beginning at 6:00 a.m. and lasting approximately 20 minutes. Pl. Dep. 50:13–23. Plaintiff was assigned to the coulometry laboratory rather than to the TIMS unit that day. Pl. Dep. 52:24–53:5. Between 7:30 a.m. and 8:00 a.m., Plaintiff walked past the lab housing the TIMS unit and observed Janice Lawson (Manager, Analytical Technical Support, F/H Area Laboratory Services), Cook, and a third person in the lab. Pl. Dep. 52:7–17. Because the laboratory was experiencing an outage with one of the chillers used to keep the air in the laboratory cool, Lawson, Cook, and an engineer were checking to see whether they would be able to use the TIMS unit that day. Cook Dep. 13:10–21. During their inspection, Lawson and Cook did not notice any condensation present on the Triton. Lawson Dep. 25:14–26:18 [Lawson's deposition may be found at Entry #31-6]; Cook Dep. 17:10–18:6, 18:19–23, 20:2–6.

Thereafter, Frazier called Plaintiff to ask him a question about the temperature and humidity operating limits for the TIMS unit. Pl. Dep. 53:5–7. Plaintiff called Johnson at home to obtain the information. Pl. Dep. 55:7-15. During that conversation, Plaintiff

4

told Johnson that he thought there may be an issue with condensation on the TIMS unit, although he had not yet inspected the unit. Pl. Dep. 55:21–56:1. He also stated that he thought management was planning to use the unit. Johnson Dep. 14:7–16. Plaintiff testified that sometime after 8:00 a.m., he visited the lab and saw condensation on the magnet and the chiller coils. Pl. Dep. 57:7–18. After observing the condensation, Plaintiff informed Johnson, who told him to change the magnet setting and put down swipes (absorbent cotton pads). Pl. Dep. 65:20–66:14.

After talking to Plaintiff, Johnson paged Lawson and told her that Plaintiff had called earlier and said that management was going to operate the TIMS unit with condensation on it. Johnson Dep. 15:7–21. According to Johnson, Lawson responded that there was no condensation on the unit, but agreed to go back into the lab with Plaintiff to investigate. Johnson Dep. 15:7–24. Lawson and Cook then went back into the lab and found liquid on the magnet of the Triton. Lawson Dep. 26:19–27:1; Cook Dep. 29:3–4. They did not see any condensation on the chiller lines or anywhere else on the instrument. Lawson Dep. 27:6–14. According to Lawson, the liquid did not appear to form as condensation typically does on that instrument. Lawson Dep. 34:2-25, 25:1-24. Instead, it appeared to them that someone had intentionally placed the liquid on the instrument. Cook Dep. 81:17–82:6. While Lawson and Cook were in the lab, Johnson again called Lawson. Johnson Dep. 17:4–14, 19:3–7. Lawson was speaking with Johnson on the telephone when Plaintiff returned to the lab carrying swipes. Pl. Dep. 67:24–68:1; Johnson Dep. 19:23–25; Cook Dep. 29:3–17. While Lawson was speaking with Johnson, Cook told Plaintiff that they had been in the lab earlier and there was no

5

condensation on the instrument. Pl. Dep. 68:9–15. Plaintiff replied that that was how he found it. *Id.* Lawson then told Plaintiff to leave the lab. Pl. Dep. 68:18–21.

Lawson called Johnson back approximately 30 minutes later and told Johnson that she was going to begin an investigation, as the moisture did not come from the conditions of the building. Johnson Dep. 18:5–13. Lawson and Cook photographed the fluid on the instrument and proceeded to dry the fluid from the instrument so that it did not cause any damage to the TIMS unit. Lawson Dep. 27:15–28:22; Cook Dep. 27:1-7, 27:24–28:12, 59:5–22, 68:16–19. Lawson then contacted Defendant's human resources department to notify them of the incident. Lawson Dep. 41:11–20.

Plaintiff testified that he returned to the lab with Maureen Bernard between 11:30 a.m. and 2:00 p.m. and again observed condensation on the TIMS unit. Pl. Dep. 70:20–71:9.

The March 11, 2010, incident was referred to Defendant's internal investigations office where the matter was subsequently investigated by Defendant's internal investigator, Mark Austin. Austin Dep. 3:6–16, 6:19–7:4 [Austin's deposition may be found at Entry #31-3]. After interviewing Johnson, Lawson, Cook, Johnson, and others, Austin produced an Investigative Summary on April 19, 2010. Austin Dep. 5:20–6:13. Austin ultimately concluded that the fluid was not condensation and that it has been placed on the instrument by Plaintiff. Austin Dep. 9:20–10:17, 13:16–20, 24:3–21.

On March 15, 2011, Plaintiff met with Fred Dohse, a vice president. Pl. Dep. 83:6–12, 92:23–24. During that meeting, Plaintiff told Dohse that he felt that he was being singled out and accused of tampering with the TIMS unit because he had raised

6

issues regarding safety procedures in the past. Pl. Dep. 85:18–23, 96:2–17. Plaintiff also told Dohse that he felt that other employees were being harassed for raising various issues with safety procedures involving shoe covers, nitrogen dewars, handrails, and waste disposal. Pl. Dep. 85:18–87:17, 88:3–22. Plaintiff also told Dohse that he believed that he was being singled out because of an issue that he raised at a safety meeting on March 10, 2010, during which he questioned Frazier about a supervisor's meeting with Cook conducted offsite at the Mi Rancho Mexican restaurant in Aiken, South Carolina. Pl. Dep. 30:4–12, 31:3–13, 96:10–17. Plaintiff testified that Dohse's conduct was harassing during the meeting because he was pounding on the desk and cursing. Pl. Dep. 90:17–23.

On April 15, 2010, Defendant held a Disciplinary Panel Meeting regarding Austin's investigation and Plaintiff's involvement in the incident. Pl. Dep. Ex. 7 [Entry #31-2 at 93]. Plaintiff testified that he did not receive the written notice that was mailed to his address on file with the company. Pl. Dep. 121:6–122:9. He stated that he learned of the hearing on a telephone call with Curtis Pitts, but that he was unable to drive from his home in Atlanta to arrive in time for the meeting. Pl. Dep. 120:16–121:2. At the meeting, Austin presented his findings to the panel. (Austin Dep. 21:19–22). Plaintiff was terminated, effective April 22, 2010, for tampering with equipment. Pl. Dep. Ex. 8, 9 [Entry #31-2 at 94–95].

7

II.  Discussion

   A.  Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

   B.  Analysis

      1.  Retaliation

Title VII forbids employers from retaliating against their employees for exercising their rights under the statutes, which are considered "protected activities." 42 U.S.C. § 2000e–3(a). "Protected activities fall into two distinct categories: participation or opposition . . . . An employer may not retaliate against an employee [for] participating in an ongoing investigation or proceeding . . . nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

8

Retaliation cases under Title VII proceed according to the well-known three-step burden shifting process first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must make a prima facie case of retaliation by producing evidence that (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Once Plaintiff establishes the elements of his prima facie case, the burden shifts to Defendant to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

If a plaintiff seeks to establish the first element of the prima facie case by producing evidence that he has opposed unlawful activity, the employee's belief that the conduct he opposed violates the statute in question must be objectively reasonable. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338–39 (4th Cir. 2006). Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law. *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268 (2001)).

Defendant argues that Plaintiff has failed to establish that he engaged in protected activity under Title VII. [Entry #31-1 at 16]. In response, Plaintiff fails to respond to Defendant's argument or articulate the activity that he contends was protected. Plaintiff

9

incorrectly identifies the threshold issues in this case as whether he applied for a promotion and whether Defendant knew he had applied. [Entry #35 at 24]. In a retaliation case, however, the threshold issue is whether the plaintiff engaged in protected activity.

Plaintiff has offered no evidence that he engaged in any participation activity. At most, he is attempting to assert that he engaged in opposition activity. His complaint alleges that he (1) "complained to management about an inappropriate relationship between one of his female managers and another male manager and the favoritism shown to that male manager by the female manager," and (2) "complained about his managers consuming alcoholic beverages while on work time and at work functions contrary to Company policy." [Entry #1 at ¶ 8]. In his deposition, however, Plaintiff testified that the only complaints he made to the company were related to safety issues. Pl. Dep. 126:20–127:13. He also testified that he did not make any formal complaints regarding Cook or Lawson prior to the incident on March 11, 2010, and stated that any informal complaints that he may have made would have been related to safety issues. Pl. Dep. 35:25–37:25. Complaints about safety issues, without any relationship to the classes protected by Title VII, cannot objectively be considered opposition activity. Although Plaintiff has attempted to raise questions of fact surrounding his FLM promotion and the March 11, 2010, incident, he has provided no evidence demonstrating that he opposed discriminatory practices in the workplace. For this reason, the undersigned recommends that Plaintiff's retaliation claim be summarily dismissed.

        2.       Contract Claims

Plaintiff also asserts claims for breach of contract and breach of the covenant of good faith and fair dealing. [Entry #1 at 5]. Both claims are applicable only where a contract exists between the parties. *See Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962) (setting forth the elements of a breach of contract claim); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 941 (D.S.C. 1997) (finding that the implied covenant of good faith and fair dealing "can attach only to an existing contract"). Defendant argues that because Plaintiff was an at-will employee without an employment contract, both claims should be dismissed. [Entry #31-1 at 27–30]. Plaintiff concedes that Defendant's employee handbook did not create a contract or alter his at-will employment status. [Entry #35 at 18]. He contends, however, that a contract was created by Defendant's safety policy, which allegedly required employees to report any significant variances with established procedures or practices. *Id.* at 19. Plaintiff's entire argument on this issue is based on the safety policy, which is not in the record, and his self-serving affidavit created after the close of discovery and after Defendant filed its motion. *Id.* The undersigned concludes that the record does not support the existence of an employment contract and recommends Defendant's motion be granted as to Plaintiff's remaining claims.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #31] be granted.

IT IS SO RECOMMENDED.

June 20, 2013                                             Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).